

Peter L. Contini
Partner
pcontini@lbcclaw.com
Direct Dial (516) 837-7320

Attorneys at Law

L'Abbate, Balkan, Colavita & Contini, L.L.P.
1001 Franklin Avenue, Garden City, New York 11530
T. 516.294.8844  F. 516.294.8202
www.lbcclaw.com

October 1, 2014

**Via Electronic Filing**
Hon. Raymond J. Dearie, U.S.D.J.
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

>        Re:    Bakayoko, et al. vs. 180 Bklyn Livingston, LLC, d/b/a
>               Dallas BBQ, et al.
>               Docket No. 14-CV-2430 (RJD)(MDG)

Dear Judge Dearie:

My office represents the defendants in the above-referred case and I submit this letter requesting a pre-motion conference in accordance with your motion rules. The defendants seek to move for summary judgment as explained herein.

The plaintiffs are servers and one runner who, as such, constitute tipped employees of the defendants which are three restaurants operating as Dallas BBQ restaurants within the City of New York. The plaintiffs claim violations of the Fair Labor Standards Act as well as violations of New York State law. The plaintiffs' FLSA claims boil down to whether they are being forced to work off the clock thereby being denied adequate wages to meet minimum wage requirements and to compensate them at overtime wage rates. These wage claims emanate from a clock-out/cash-out procedure utilized by the defendants. In order to understand the basis for the claims and the motion, an explanation of the clock-out/cash-out procedure is required. This letter will describe that process at the Brooklyn Dallas BBQ where all the plaintiffs presently work.

Servers enter all food and beverage orders into a Positouch terminal (referred to as a "POS terminal"). Credit card sales, cash sales, and credit card tips are all entered into the POS terminals by the servers at the time of payment. Servers retain all cash payments as there are no cash registers and thus, effectively, serve as their own "banks" during the course of their shifts. About the half of the sales are paid in cash so servers may accumulate sizeable amounts of cash by the end of the shift. When the server has concluded working at the end of the shift, the server will go to a POS terminal and print out four identical cash-out reports. The cash-out reports show, among other things, totals for that server's credit card sales, cash sales (both net of taxes) and credit card tips. There is also a calculation of sums the server must tip out to bussers (3% of net cash and credit card sales), expediters (1.5% of net cash and credit card sales), and bartenders (.075% of net cash and credit card sales). For tax reporting purposes, the server is deemed to have received in tips 8% of net cash and credit card sales after tip-outs to bussers, expediters, and bartenders. After printing out the four cash-out reports, the servers divide their cash into four piles based on the cash-out reports. The amount of cash for each of the three tipped-out parties is

Hon. Raymond J. Dearie, U.S.D.J.
October 1, 2014
Page **2** of **3**

each wrapped in a cash-out report and placed in a safe location for each of those parties.  The fourth pile of cash is the amount of cash owed to the restaurant for cash sales as reflected on the cash-out report.  That is deposited into a Brinks safe and a receipt for the amount of the deposit is printed by the safe.  The cash remaining is what the server keeps as tips.

When a server has to work until the restaurant closes, that server may have to do preparation work for the next day such as filling condiments and stocking plates.  This is referred to as "sidework".  Servers typically do the sidework before printing the cash-out reports, but some servers elect to do the sidework after printing the cash-out report and dividing the cash as described above.  After doing the sidework, printing the cash-out reports and dividing the cash, the server returns to the POS terminal and clocks out and at that time receives a clock-out report reflecting, among other things, the time that the server clocked out.  If there was sidework which had to be done, the server would then take that clock-out report to a designated server who signs the clock-out report to confirm that the sidework was done. The server will then go to a manager with the fourth cash-out report, the Brinks receipt, the clock-out report (if this is a closing shift and sidework was done), and the credit card receipts the server received during that server's shift.  The manager checks to make sure that the credit card slips were signed and that the proper amount was deposited into the safe in accordance with the cash-out report and then the manager discharges the server.

The plaintiffs claim that sidework, tip distribution, and the deposit of funds into the Brinks safe all occur after the server clocks out. The plaintiffs allege that the Dallas BBQ restaurant requires the employees to clock-out and print their cash-out reports at the same time and then all subsequent work is off the clock, thereby depriving the plaintiffs of minimum wages and overtime wages.  The plaintiffs also claim that the 8% assessment of tips to servers violates the FLSA.

We believe the defendants are entitled to summary judgment dismissing all of the FLSA claims.  Based on our research to date, we believe that whether the 8% assessment of tips to servers by the Dallas BBQ restaurant violates the FLSA may be a matter of first impression.  It is well established that the IRS is entitled to make such an assessment for income tax and FICA reporting purposes.  We are not aware of any cases that discuss whether a private party may make a similar assessment.  However, as recognized by the IRS and many others, restaurant servers cannot be trusted to make accurate disclosure of their cash tips.  Dallas BBQ does not assess the tip out amounts for its own financial benefit as Dallas BBQ retains no portion of the tips.  Rather, the assessment is done for tax reporting purposes as well as for the protection of the tipped-out parties to make sure they get their fair share.  The tips assessed by Dallas BBQ to the servers when added to the tip-out amounts total 13.25% of net cash and credit card sales, which is reasonable in light of documented credit card tips amounting to about 15%.  For all the reasons recited by the United States Supreme Court as to why the IRS is not bound by what servers declare as their cash tips, we believe the same applies for a private enterprise such as Dallas BBQ.

Under the FLSA, taking into account a tip credit, the plaintiffs are entitled to a minimum wage of $2.13 per hour.  The plaintiffs are paid in accordance with the New York Labor Law at the rate of $5.00 per hour including tip credit.  Assuming everything that the plaintiffs claim is true as to the amount of time they work off the clock every day and every week, they are still paid well in excess of $2.13 per hour.  Thus, we respectfully submit they do not have a valid

Hon. Raymond J. Dearie, U.S.D.J.
October 1, 2014
Page **3** of **3**

claim for failure to pay the minimum wage.  The FLSA does not recognize a claim for gap time provided the minimum wage is paid and, therefore, plaintiffs have no claim for gap time.

If the hours worked by the employees exceed 40 per work, they are paid overtime in accordance with federal and New York State law.  The plaintiffs claim that the Dallas BBQ restaurants made them work off the clock for a number of hours per week as a matter of policy but they are not able to identify any manager who instructed them to clock out when they print the cash-out reports prior to doing sidework and tip distribution.  The managers all deny they ever gave such advice or instruction to any server and they assert there is no such policy.  In fact, the employee handbook instructs the employees to clock-out after they have finished all their work.  A review of the clock-out and cash-out reports from the POS terminals reflects that on many occasions the plaintiffs clocked out 15 to 30 minutes (or more) after they printed their cash-out reports.  On other occasions, they clocked out and printed the cash-out reports at or close to the same time.  None of the plaintiffs are aware of any occasion when any server was disciplined or reprimanded for clocking out after doing the sidework or tip-out distribution.  Other than the conclusory plea that "the company made me do it", there is nothing to indicate that clocking out and printing a cash report at the same time was for any reason other than a matter of convenience so that the server did not have to go back to the POS terminal a second time to clock out.  The fact that the servers on many occasions have clocked out substantial periods of time after printing the cash-out reports and that the employment manual states that employees should clock out after completing all work, refute the plaintiffs' conclusory allegations of a company policy.  Those activities of getting a manager to review the cash-out reports and credit card slips in order to be discharged after clocking out are accomplished in a matter of a minute or two and are clearly postliminary.  Postliminary time is not compensable.

Only one of the plaintiffs was a runner for a period of time.  He testified that the only thing he did off the clock was waiting to get paid.  All sidework and everything else was done before he clocked out.  Waiting in line to get paid is clearly postliminary and not compensable.  Therefore, any claims for runners should be dismissed.  None of the plaintiffs are bussers or bartenders and, therefore, those claims (if they are asserted in this lawsuit) should likewise be dismissed.

Based on the foregoing, we respectfully submit that the defendants are entitled to summary judgment dismissing all FLSA claims and we request a pre-motion conference.

Respectfully submitted,

Peter L. Contini

PLC:mc
cc:    Brent Pelton, Esq.
       (Via ECF)
       Chambers, Hon. Raymond J. Dearie, U.S.D.J.
       (Via Courtesy Paper Copy)

